Court of Customs and Patent Appeals.
April 27, 1931.

Interference proceeding between Joseph Sachs and George B. Wadsworth. Decision for the latter, and the former appeals.

S. Jay Teller, of Hartford, Conn. (William A. Smith, Jr., of Washington, D. C., of counsel), for appellant.

Walter F. Murray and Frank L. Zugelter, both of Cincinnati, Ohio, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding, in which appellant appeals from a decision of the Board of Appeals of the United States Patent Office awarding priority of invention to appellee, reversing the decision of the examiner of interferences, in which priority of invention was awarded to appellant.

The parent application of appellant, of which the application before us is a division, was filed on August 2, 1922, and the application of appellee was filed on November 17, 1923. A patent was issued to appellee upon his application on January 11, 1927. Appellant thereupon filed a divisional application in which he copied from the patent to appellee the counts here in issue and requested an interference, which was declared. Since appellant's application was pending at the time of the issuance of said patent to appellee, and disclosed the invention in issue,

appellant, having been the first to file, is the senior party and the burden was upon appellee to establish priority of invention by a preponderance of evidence.

The counts in issue are three in number. Count 1 is illustrative and reads as follows: "Count 1. In a switch box having a switch and fuses therein, a lid for the box having a fuse opening therein, a hopper mounted on the lid about the fuse opening and adapted together with the lid, to house the fuses and to isolate them from the interior of the box, and a shutter controlling access to the fuse casing when the lid is closed."

The issue relates to electric service switch boxes, wherein fuses are also installed in the box. It is stated by the Board of Appeals as follows: " * * * The essential features of the counts are a hopper-like shielding member attached to the inside of the lid of the box surrounding the fuses and positioned around an opening in the lid through which the fuses are accessible from the outside of the box and a supplemental cover or shutter over the opening in the lid and mouth of the hopper. The hopper prevents access to any portion of the inside of the box except the exposed fuses. This avoids danger of contact or possibility of tampering with other parts of the wiring or switch elements as long as the lid is closed."

Both parties took testimony.

In his preliminary statement, appellant alleged conception on or about July 1, 1921.

Appellee testified that just prior to June 23, 1919, he had a switch box, embodying the invention, made up by his son. This box, which was provided to take cartridge fuses, was offered in evidence as Exhibit 18, and has been examined by us. A short time thereafter, appellee testified, he made a drawing, which was offered in evidence, from which another switch box, adapted to take plug fuses, was made prior to October 10, 1919. This box was not produced in evidence, and the testimony was that it had been lost.

Appellee's testimony as to the construction of Exhibit 18 was corroborated by his son, and appellee's brother testified that he saw said exhibit some time between the 6th and 15th of August, 1919. He said: " * * * He [referring to appellee] showed me a sketch, which he was arranging to manufacture, of his 125 screw plug fuse switches, and he showed me a model of a 250 volt N. E. C. fuse, which he had already made, to overcome the criticism that was made on the switches, where by opening the lid of the box, the fuse pan barrier was all

attached to the lid and there would be no trouble of removing any parts."

The examiner of interferences awarded appellee a date of conception of August 15, 1919, and found that said Exhibit 18 ·was constructed and in existence at least as early as said date; that the device was of such a character as to require tests of the same to constitute a reduction to practice, and that there was no proof that such tests had been made; that appellee was not diligent in reducing his invention to practice from the time that appellant entered the field, or thereafter until he (appellee) reduced the invention to practice in 1923. For these reasons he awarded priority of invention to appellant.

The Board of Appeals concurred in the finding of the examiner as to date of conception by appellee, but held that a mere closing of the cover would demonstrate the practicability of the device, and that it must be assumed that it was tested by closing the cover and actuating the shutter and switch, and observing that the hopper properly surrounded the fuse pockets. It therefore found that appellee reduced the invention to practice prior to August 15, 1919, and further found that there was no evidence of concealment or abandonment by appellee, or stimulation to activity upon his part by the work of appellant.

The first question before us is: Does the evidence show a reduction to practice by appellee of his invention prior to August 15, 1919, as found by the Board of Appeals? If this question be answered in the affirmative, the next question is whether there was any concealment or suppression by him of the invention which would forfeit his right to an award of priority.

The device in issue, so far as the invention is concerned, is exceedingly simple. Exhibit 18, which is conceded to embody the invention, is of full size and adapted for practical use. A mere inspection of it, and opening and closing of the lid, disclose that it is operative. We agree with the Board of Appeals that it must be assumed that the lid was opened and closed by both appellee and his son. The testimony shows that appellee exhibited the device to his brother, and we think it is fairly to be inferred that in doing so he mechanically manipulated the lid and shutter. The only test necessary to show that it was operative was to ascertain that it was made in accordance with appellee's conception. If it was, it was bound to be operative. Exhibit 18 before us shows

that it is operative now, and we assume that it was operative then.

There are some devices so simple that a mere construction of them is all that is necessary to constitute a reduction to practice. In the case of Lindemeyer v. Hoffman, 18 App. D. C. 1, it was held that no actual test of the practicability of a device is needed where the device is itself complete and capable of practical use.

In the case of Rolfe v. Hoffman, 26 App. D. C. 336, it was held that there is a class of simple devices as to which it is not essential that actual tests of the invention be made in order to constitute a reduction to practice. This case was not dissimilar, on the facts, to the case at bar. It involved an invention in electric circuit protectors, and the court held that the construction of three of the devices was a reduction to practice, and that actual tests were not necessary.

We agree with the Board of Appeals that appellee reduced his invention to practice prior to August 15, 1919, which is prior to appellant's entry into the field, and priority of invention must be awarded to appellee unless he concealed and suppressed his invention, thus forfeiting his right to such award.

It appears from the testimony that in November, 1922, appellee's company issued a catalogue in which devices embodying the invention in issue were shown, although the evidence also shows that appellee's company was not in a position at that time to manufacture and sell such devices. It further appears that orders to the printer for the printing of such catalogue were given on August 15, 1922; that in 1923 appellee's assignee began the manufacture of the device, and has sold more than 250,000 of the same.

The testimony shows that appellee's company was in financial straits much of the time between 1919 and 1923, and on November 15, 1919, its plant was almost wholly destroyed by fire, practically suspending operations for a period of one year.

Of course, there could be no charge of suppression or concealment of appellee's invention after the publication of the catalogue in November, 1922, orders for which were given in August, 1922. Therefore, whether there was concealment and suppression of the invention must be determined from appellee's conduct between August, 1919, and the middle of August, 1922, a period of about three years. One year of such period is fully accounted for by the fire hereinbefore referred to, and as to the other two years of

such period, we do not think the evidence warrants a finding of concealment and suppression forfeiting appellee's right to an award of priority of invention.

Appellee was not spurred to activity by any disclosure of appellant because, so far as the record shows, he knew nothing about appellant's invention at the time he (appellee) manufactured his device and placed it upon the market.

 Since estoppels preclude a party from showing the truth, they are not favored and should not be applied in any case where the facts do not clearly justify their application. Miller v. Hayman, 46 F.(2d) 188, 18 C. C. P. A. ——.

We find no error in the decision of the Board of Appeals, and it is affirmed.

Affirmed.